IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CORINE E. WORTHY,<br><br>    *Plaintiff,*<br><br>v.<br><br>TROY MEINK, SECRETARY OF THE<br>UNITED STATES AIR FORCE,<br><br>    *Defendant.* | CIVIL ACTION NO.<br>5:24-CV-00016-TES |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is the United States Air Force's Motion to Dismiss [Doc. 29]—

filed by Defendant Troy Meink in his official capacity as the Secretary of the Air Force—

seeking dismissal of pro se Plaintiff Corine E. Worthy's Amended Complaint [Doc. 27]

under Federal Rule of Civil Procedure 12(b)(6). As explained in further detail below, the

Court **GRANTS** the Air Force's Motion to Dismiss [Doc. 29] and **DISMISSES** the

Amended Complaint [Doc. 27] **without prejudice** for failure to state a claim.

## BACKGROUND

In keeping with *McCullough*'s two-step framework, the Court begins by

identifying Plaintiff's conclusory allegations and discarding them. *See McCullough v.*

*Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

(2009)); *see, e.g.*, [Doc. 27, p. 1]. Then, the Court determines whether the remaining

factual allegations, accepted as true, give rise to plausible claims and "unlock the doors

of discovery." *Iqbal*, 556 U.S. at 678–79; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); [Doc. 27].

## A.     <u>Factual Background</u>

Plaintiff is a black, African American woman born in 1961. [Doc. 27, p. 4]; [Doc. 27-1, p. 4]. During the time period relevant to this dispute, she was an Air Force employee working as a Process Analyst in the Resources Section of the 402d Aircraft Maintenance Group at Robins Air Force Base, Georgia—where she had worked since February 17, 2019. [Doc. 27, p. 4]; [Doc. 27-1, p. 4]. Plaintiff alleges that between mid-2020 and spring 2021, she was subjected to a pattern of "unwelcomed and unfavorable treatment" by her management—Colonel Lindsay Droz, Mr. Michael Arnold, Mr. Jonathan O. Tucker, Mr. Mark A. Crook, and Brigadier General Jennifer Hammerstedt—which she attributes to discrimination based on race, color, sex, and age, and retaliation for engaging in protected EEO activity. *See* [Doc. 27]. Among other things, she claims that her management denied her requests for telework and leave, assigned her work after hours and during leave, declined to discuss matters with her while her Equal Employment Opportunity (EEO) charges were pending, and imposed a five-day suspension for failure to complete an assignment. *See* [*id.*].

### 1.     **Telework and leave issues**

First, Plaintiff claims her supervisors unreasonably denied her requests for time off or additional time to complete tasks. [Doc. 27-1, Claims 3, 11]. For example, from

October 20, 2020, through November 18, 2020, Plaintiff's immediate supervisor, Mr.

Crook, denied her request for official time off to vote early during the 2020 Presidential

Election Primary and to prepare for and to attend an arbitration involving a former

employee. [*Id.* at Claim 3]. Plaintiff used personal leave instead. [*Id.* at Claim 3]. Later,

on January 12, 2021, and February 19, 2021, Plaintiff claims that "Mr. Crook refused to

accommodate [her] in the assignment of her duties on February 24, 2021, while on

approved time for EEO complaints[,] causing her to miss assignments." [*Id.* at Claim

11].

### 2.    Work assignments and performance review

In a similar vein, Plaintiff claims that the way her work was assigned to her

constituted retaliation, a hostile work environment, and harassment. *See* [Doc. 27-1,

Claims 5, 6]. Plaintiff says Mr. Tucker started assigning her work on November 20, 2020.

[*Id.* at Claim 5]. Plaintiff felt micromanaged, bullied, and harassed because her second-

level supervisor was assigning her duties. [*Id.*]. Mr. Tucker assigned Plaintiff tasks while

she was on leave and after working hours. [*Id.* at Claim 6]. So, Plaintiff responded late

or did not respond to the assignments emailed to her while she was off duty. [*Id.*].

Plaintiff also alleges Mr. Crook retaliated against her for filing an EEO charge

when he conducted her yearly progress review. *See* [*Id.* at Claim 7]. Mr. Crook

conducted Plaintiff's progress review for the 2021 appraisal period on January 25, 2021.

[*Id.*]. The 2021 appraisal period ran from April 1, 2020, through March 31, 2021. [*Id.*].

During her review, Mr. Crook assigned Plaintiff some items to accomplish before March 31, 2021. [*Id.*].

### 3.    Refusal to address workplace concerns

Plaintiff also claims that one of her supervisors told Plaintiff he could not address her concerns about retaliation or hostile work environment because of her active EEO charges. [Doc. 27-1, Claims 4, 8]. On November 18, 2020, Plaintiff received an email from Colonel Droz telling Plaintiff that because "[she] ha[d] an active formal EEO complaint, [he] can't address anything that could come up in litigation." [*Id.* at Claim 4]. Mr. Crook and Mr. Tucker were copied on this email. [*Id.*]. Later, on February 1, 2021, Plaintiff received an email from General Hammerstedt stating that she could not comment on her pending EEO charges for retaliation and hostile work environment. [*Id.* at Claim 8]. Mr. Crook, Mr. Tucker, and Colonel Droz were copied on this email. [*Id.*].

### 4.    Disciplinary action

A set of Plaintiff's claims rest on events after she met with Mr. Tucker on February 16, 2021. [*Id.* at Claim 9]. Mr. Tucker asked Plaintiff to meet with him privately "in front of her peers." [*Id.*]. Master Sergeant McDonald went with Plaintiff and Mr. Tucker to this meeting, "closed the door[,] and blocked it." [*Id.*]. Plaintiff had never met Master Sergeant McDonald before this encounter. [*Id.*]. At that meeting, Mr. Tucker issued Plaintiff a Notice of Proposed Suspension without pay for five days. [*Id.* at Claim 10]. A month later, on March 17, 2021, Mr. Tucker issued a Notice of Decision to

suspend for five days without pay based on Plaintiff's alleged failure to complete an assigned task on January 22, 2021. [*Id.* at Claim 13]. Plaintiff served that suspension from April 3–7, 2021. [*Id.* at Claim 15].

After the meeting in February through the end of March 2021, Mr. Tucker repeatedly asked Plaintiff to meet with him in private. [*Id.* at Claim 14]. Plaintiff refused to meet with Mr. Tucker in private because she did not feel safe doing so and made her upper chain-of-command aware. [*Id.*].

### 5.     Threat of escalation over time records

Plaintiff's final example of how her supervisors retaliated, harassed, and created a hostile work environment is based on an email from Mr. Crook informing Plaintiff that he was going to elevate "the issue to [his] next level of management" if Plaintiff did not "attest the pay periods" on March 4, 2021. [*Id.* at Claim 12]. Plaintiff refused to "attest the pay periods" because she believed the time records were inaccurate. [*Id.*].

### B.     <u>Procedural Background</u>

Plaintiff first contacted the 78th Air Base Wing EEO Office on September 20, 2019, to file an informal complaint of discrimination based on race, color, age, and reprisal. [Doc. 27-2, ¶ 1]. That informal complaint progressed to a formal complaint on March 24, 2020, and Plaintiff later supplemented it on June 19, 2020. She filed a second informal EEO complaint on October 7, 2020, which led to a formal complaint on November 18, 2020. Plaintiff supplemented that complaint in January 2021 and twice in March 2021.

[Doc. 27-1, p. 4].

The Air Force completed its investigation into Plaintiff's second formal complaint in May 2021, issuing a Final Agency Decision (FAD) in September 2021 finding in favor of the Air Force on all claims. [Doc. 29-1 at p. 2]. Plaintiff appealed the FAD to the Office of Federal Operations (OFO), which affirmed. [*Id.*]. Plaintiff sought reconsideration, which the OFO denied on December 14, 2023. [*Id.*].

Having exhausted her administrative remedies, Plaintiff filed this lawsuit on January 16, 2024, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621–34. *See* [Doc. 1].[1] Plaintiff's claims in this case are based on the same events she detailed in the November 2020 EEO charge. [Doc. 32-1 at p. 2].[2]

The Air Force moves to dismiss, arguing that the Amended Complaint "fail[s] to meet the basic pleading requirements of Federal Rule of Civil Procedure 8" and, regardless of how Plaintiff's claims are construed, they are without merit. [Doc. 29-1, p. 1].

---

[1] *See Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277 (11th Cir. 2004) (holding that plaintiff's retaliation claims were not barred under this circuit's liberal EEO charge strictures).

[2] Plaintiff has another lawsuit based on the March 2020 EEO charge and underlying events pending before Senior District Judge C. Ashley Royal. *See* Complaint, Worthy v. Kendall, No. 5:23-cv-519-CAR (M.D. Ga. Dec. 29, 2023), Dkt. No. 1.

## LEGAL STANDARDS

Having laid out the relevant background, the Court turns to the legal standards that guide its analysis.

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough*, 907 F.3d at 1333 (citing *Iqbal*, 556 U.S. at 678–79).

To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). Stated differently, the complaint must

allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### B.    Pro Se Pleadings

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, this Circuit has clarified that this "liberal construction" standard "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Lowe v. Delta Air Lines Inc.*, 730 F. App'x 724, 728 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 431 (2018) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)). Furthermore, even a pro se litigant must adhere to the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

### DISCUSSION

Plaintiff frames each of her 15 numbered claims as retaliation claims, but her allegations clearly reflect an intent to assert status-based discrimination and hostile work environment claims as well. *See* [Doc. 27-1]; s*ee generally* [Doc. 29-2]; [Doc. 29-3]. For example, Plaintiff explicitly alleges that she was discriminated against based on her her race, color, sex, and age. [Doc. 27, p. 4]. While such allegations may be conclusory,

they are also irrelevant to pure retaliation claims, which do not require any showing of bias based on protected characteristics. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1326 (11th Cir. 2020).

Thus, mindful of Plaintiff's pro se status, the Court liberally construes the Amended Complaint to assert (1) disparate treatment claims under Title VII and the ADEA, (2) a status-based hostile work environment under Title VII, and (3) retaliation claims under Title VII. *See* [Doc. 27]. Even liberally construed, Plaintiff cannot prevail on any theory.

### A.    Retaliation Claims

Plaintiff frames her claims as retaliation claims, so the Court begins by analyzing them as such under the federal-sector provisions of Title VII and the ADEA. *See* 42 U.S.C. § 2000e-16(a); 29 U.S.C. § 633a. Those provisions, like their private-sector counterparts, forbid retaliation against a federal employee for opposing unlawful discrimination or for participating in the EEO process. *See* 42 U.S.C. §§ 2000e-3(a), 2000e-16(a); 29 U.S.C. § 633a(a); *Gomez-Perez v. Potter*, 553 U.S. 474, 479–80 (2008). To state a retaliation claim under Title VII or the ADEA, a plaintiff must plausibly allege (1) statutorily protected activity, (2) adverse action, and (3) a causal connection between the two. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (explaining the elements of a Title VII retaliation claim); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (ADEA).

An adverse action is conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861–62 (11th Cir. 2020). Routine workplace frictions—such as ordinary task assignments, scheduling or timekeeping reminders, or performance feedback—are typically not deemed adverse absent additional facts elevating them beyond "petty slights or minor annoyances." *Burlington Northern*, 548 U.S. at 68. Causation *can* be inferred from "close temporal proximity between the statutorily protected activity and the adverse employment action," "[b]ut mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citations omitted); *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Assuming the Amended Complaint adequately alleges the first two elements, Plaintiff's retaliation claim still fails on the third element—causation. The Air Force doesn't contest that Plaintiff's EEO activity throughout 2020 and 2021 qualifies as protected activity, satisfying the first element.

As for the second element, adverse action, most of Plaintiff's allegations describe ordinary workplace frictions that do not come close to *Burlington Northern*'s objective threshold. *See* 548 U.S. at 68. Routine tasking—including assignment by a second-level supervisor—and assignment emails sent during leave or after hours are insufficient to

dissuade a reasonable worker from engaging in protected activity. [Doc. 27-1, Claims 5, 6]. Likewise, the mid-cycle progress review was routine feedback, not a materially adverse action. [*Id.* at Claim 7]. Denials or limitations on official time or schedule accommodations, as pleaded, fall in the same bucket. [*Id.* at Claims 3, 11]. Administrative reminders and warnings—such as the direction that timekeeping issues would be elevated if not attested—are also insufficient without more. [*Id.* at Claim 12]. And leadership emails explaining they could not discuss issues bound up with her pending EEO litigation do not, without additional facts, qualify as materially adverse under the governing standard. [*Id.* at Claims 4, 8]; *see Burlington Northern*, 548 U.S. at 68.

The five-day suspension without pay is a bit different, but the Amended Complaint slices that single disciplinary action into three steps: a proposal, [*id.* at Claim 10], a decision, [*id.* at Claim 13], and the suspension itself, [*id.* at Claim 15]. The Air Force concedes that the suspension could meet the *Burlington Northern* standard. [Doc. 29-1, p. 13]. The Court agrees and treats the three steps as one adverse action.

Even so, the Amended Complaint does not plausibly allege causation. Plaintiff relies almost entirely on temporal proximity: EEO activity in late 2020 with amendments in early 2021, followed by disciplinary steps in February and March 2021. [Doc. 27-1, Claims 10, 13, 15]. But temporal proximity must be "very close," and the ongoing back-and-forth of workplace events and continuous EEO activity undermines any inference of causation that could be reasonably drawn based on timing alone.

*Thomas*, 506 F.3d at 1364; *Shannon*, 292 F.3d at 716. Plaintiff also doesn't allege that the official who proposed or decided the suspension knew of a particular protected act and acted because of it, [Doc. 27-1, Claims 10, 13], nor does she tie any other challenged incident to protected activity with more than the bare label of "retaliation," [*id.* at Claims 3, 5–8, 11–12, 15]. *See Brungart*, 231 F.3d at 799.

In short, while Plaintiff plausibly alleges protected activity, she does not plausibly allege any materially adverse action beyond the single suspension, and she alleges no facts permitting a reasonable inference that any decisionmaker acted because of her protected activity. The retaliation claims under Title VII and the ADEA therefore fail. *See Crawford*, 529 F.3d at 970; *Weeks*, 291 F.3d at 1311; *Burlington Northern*, 548 U.S. at 68.

In her Response brief [Doc. 32], Plaintiff tries to argue that her supervisors retaliated against her after she filed her second EEO charge on November 18, 2020, by denying her telework request in July 2020 [Doc. 27-1, Claim 1] and requesting Plaintiff escalate issues through her chain of command as late as July 31, 2020. [*Id.* at Claim 2]. These incidents occurred before Plaintiff's second informal EEO charge on October 7, 2020, and could not have been in retaliation of the second EEO charge on which the Amended Complaint is based. *See* [Doc. 27, p. 5]. Those incidents may support a claim of retaliation for earlier EEO activity (and likely should have been brought in Plaintiff's other pending action), but they cannot support a retaliation claim for the November

2020 EEO charge relevant to this case.

Because the Amended Complaint clearly fails to allege causation, Plaintiff's retaliation claims are subject to dismissal.

**B.     Disparate Treatment Claims (Title VII and ADEA)**

Next, the Court considers whether Plaintiff plausibly alleges a disparate treatment claim under Title VII or the ADEA. Title VII's federal-sector provision prohibits "discrimination based on race, color, . . . [or] sex" in "personnel actions affecting employees in military departments." 42 U.S.C. § 2000e-16(a). This means that "personnel actions must be made in 'a way that is not tainted by differential treatment based on' a protected characteristic." *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1352 (11th Cir. 2024) (quoting *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1199 (11th Cir. 2021)). Similarly, the ADEA's federal-sector provision prohibits "discrimination based on age" in "personnel actions affecting employees who are at least 40 years of age in military departments." 29 U.S.C. § 633a(a).

To state a disparate treatment claim under Title VII or the ADEA, a plaintiff must allege facts sufficient to allow a reasonable inference that unlawful discrimination played some role in the way a decision was made. *Terrell*, 98 F.4th 1343, 1352 (quoting *Babb*, 992 F.3d at 1199). While the *McDonnell Douglas* framework and the "convincing mosaic test" no longer apply to claims brought under the federal-sector provisions of Title VII and the ADEA, a plaintiff must still provide enough factual matter to suggest

intentional discrimination. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (citations omitted); *see, e.g.*, *Durr v. Sec'y of Dep't of Veterans Affs.*, No. 21-12867, 2022 WL 2315086 (11th Cir. June 28, 2022) (citation omitted). The kinds of factual allegations that courts require a plaintiff to allege to establish a *prima facie* case under the *McDonnell Douglas* framework provide examples of the kinds of facts that would suggest intentional discrimination: (1) the plaintiff was a member of a protected class (2) the Plaintiff was subjected to an adverse employment action; (3) the plaintiff's employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) the plaintiff was qualified for her position. *Ranson-Dillard v. Tech. Coll. Sys. of Ga.*, No. 7:20-cv-247, 2022 WL 609155, at *5 (M.D. Ga. Mar. 1, 2022) (citation omitted); *see McDonnell Douglas*, 411 U.S. at 802.

Here, Plaintiff is a member of several protected classes, and her "Outstanding" rating suggests that she was qualified for her job. [Doc. 27, p. 4]; [Doc. 27-1, p. 1, 5]. However, even liberally construed, Plaintiff's disparate treatment claims don't clear the bar for two reasons.

First, most of Plaintiff's claims fail to allege anything close to an adverse action, which generally requires an employee to show an objectively "*serious and material change in the terms, conditions, or privileges of employment.*" *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The Court easily finds that the telework and leave denials, task assignments, emails, and performance reviews were not adverse

employment actions, as they did not tangibly affect terms or conditions of Plaintiff's employment.

Second, Plaintiff provides no factual link between any alleged discriminatory action and her protected classes. Although Plaintiff repeatedly asserts that her supervisors engaged in discriminatory conduct, she does so in purely conclusory terms without providing any supporting factual detail. *See* [Doc. 27]. Because she offers no specific allegations whatsoever suggesting that any of the incidents had anything to do with her race, color, sex, or age, she fails to plausibly allege that any decision was tainted by discrimination and thus fails to state a claim for disparate treatment under Title VII or the ADEA. *See* [*id.*].[3]

Plaintiff argues that "her Amended Complaint contains claims which already have been vetted and accepted by the 78th Air Base Wing Equal Opportunity Office" and cites *Conley v. Gibson* for the proposition that her Amended Complaint need only give the Air Force "fair notice of what [her] claim is and the grounds upon which it rests." [Doc. 32, p. 2 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Twombly*, 550 U.S. at 561–563)]. These arguments are irrelevant because the Equal Opportunity Office applied a different (lower) standard, and *Conley*'s notice-pleading standard has

---

[3] Plaintiff also offers new factual allegations in her Response, claiming that she "recently learned that Mr. Tucker suspended Gregory Jackson, Black male with some EEO [sic], for three days for missing a suspense." [Doc. 32, p. 16]. She argues that "this evidence could reasonably lead to an inference of discrimination within claims in the Amended Complaint. [*Id.*]. However, Plaintiff may not amend her operative complaint through briefing on a motion to dismiss, so the Court does not consider this new allegation nor the document attached as Exhibit 1 to her Response brief. [*Id.*]; [Doc. 32-1].

not been the law for nearly two decades. *See* 29 C.F.R. §§ 1614.103, 1614.107; *Twombly*, 550 U.S. at 556.

Because Plaintiff fails to state a plausible disparate treatment claim under Title VII or the ADEA, those claims must be dismissed.

## C.   Status-Based Hostile Work Environment Claim

The Court also construes the Amended Complaint as asserting a status-based hostile work environment claim under Title VII. To state a hostile work environment claim under Title VII or the ADEA, a plaintiff must allege that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *Walton v. Kendall*, No. 5:23-cv-355 (CAR), 2025 WL 952215, at *9 (M.D. Ga. Mar. 28, 2025) (quoting *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019)). For Plaintiff's hostile work environment to be actionable, the environment must be one that a reasonable person would find hostile, and Plaintiff must have subjectively perceived it to be hostile. *Id.*; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).

Plaintiff's claim of hostile work environment fails to make out the necessary facts to support that a reasonable person would find the environment hostile. "To evaluate

the objective severity of the harassment, courts must look at the totality of the circumstances including '(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Walton*, 2025 WL 952215, at *10. The conduct Plaintiff alleges was not physically threatening or humiliating; it was neither frequent nor severe; and there is no allegation it unreasonably interfered with Plaintiff's job performance. Indeed, there is no allegation showing how any of the described events are based on her race, color, sex, or age.

Thus, Plaintiff fails to state a hostile work environment claim under Title VII or the ADEA.

### D.    <u>Retaliatory Hostile Work Environment Claims</u>

In her Response, Plaintiff clarified that she claimed retaliatory hostile work environment in her Amended Complaint. *See* [Doc. 32, pp. 13–15]; [Doc. 27, p. 4]. The Eleventh Circuit has made it clear that "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015). Even though Plaintiff is pro se, she must still abide by the rules and laws of this Court. *Moon*, 863 F.2d at 837; Fed. R. Civ. P. 15(a)(2).

### <u>CONCLUSION</u>

Accordingly, because the Amended Complaint, even when liberally construed,

fails to state a claim under any plausible theory, the Court **GRANTS** the Air Force's

Motion to Dismiss [Doc. 29] and **DISMISSES** Plaintiff's Amended Complaint [Doc. 27]

**without prejudice**.

      **SO ORDERED**, this 22nd day of August, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**